UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUMAN ROGERS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF HARVEY, ERIC J. KELLOGG, DENARD EAVES, UNKNOWN HARVEY POLICE OFFICERS, and OFFICER J. WINSTON <br><br> Defendants. | Case No. 16-cv-05871 <br><br> Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

This case is about an arrest by police officers of the City of Harvey. Plaintiff Truman Rogers sued the City of Harvey, Defendant Eric Kellogg (the City's mayor), Denard Eaves (the City's Policy Chief), unknown Harvey police officers, and Officer Justin Winston under 42 U.S.C. § 1983 for excessive force in violation of his constitutional rights, as well as under state law for false arrest, malicious prosecution, and battery. Before the court is Defendants' motion for summary judgment on all claims [75]. The motion is granted in part and denied in part.

**Background**

In deciding Defendants' motion for summary judgment, the court views the evidence in the light most favorable to Rogers. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are undisputed unless otherwise noted. On January 12, 2015, Rogers's car crashed into a tree while he was driving in the City of Harvey. DSOF, [77] ¶ 13.[1] Rogers got out of his

---

[1] Bracketed numbers refer to docket entries and are followed by the page or paragraph number. Page numbers refer to the CM/ECF page number. Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "DSOF" for Defendants' Statement of Facts, [77]; "PSOF" for Rogers's Statement of Facts, [87] at 6–7; "Pl.'s Resp. DSOF" for Rogers's response to Defendants' Statement of Facts, [87] at 1–6; and "Def.'s Resp. PSOF" for Defendants' response to Rogers's Statement of Facts, [90].

car, crossed the street, and entered a store. [77] ¶ 14. Rogers testified that he was attempting to make a call or buy a phone in order to have the car towed. [77] ¶ 14.

Bystanders who witnessed the crash called the police. [77] ¶ 16. Harvey police officers arrived and entered the store while Rogers was inside. [77] ¶ 15. Rogers testified that the officers approached him as he was waiting in line for the cashier and asked about the accident. [76-1] at 51. Rogers told them that the car was his, and that his license and insurance documentation were in the car. [76-1] at 50–51. The officers asked Rogers to leave the store, and Rogers asked if he was being detained. [76-1] at 51. The officers said no, so Rogers indicated that he wanted to finish checking out in the store. [76-1] at 51. The officers then exited the store. [76-1] at 52.

Shortly after, Officer Winston entered the store and asked Rogers to step outside. [77] ¶ 18. Rogers testified that he again asked if he was being detained, and turned back around to finish checking out because he was next in the line at the checkout counter. Pl.'s Resp. DSOF, [87] ¶¶ 20, 24; [76-1] at 52. According to Winston, Rogers instead tried to walk past Winston to leave. [77] ¶ 24. The parties agree that Winston then used force: Rogers says Winston "snatched [Rogers's] arm and then pulled [him] hard with [his] arm, lifted [him] up in the air. And [Rogers] came down . . . face down into the floor," which Defendants refer to as an "arm-bar take down." [77] ¶¶ 20, 25. Rogers was then arrested. [77] ¶ 26.

According to Rogers, Winston handcuffed Rogers's hands behind his back and jerked him upwards. [76-1] at 54. Rogers, who heard his wrist crack and felt his wrist go cold, screamed in pain and told Winston he needed to go to the hospital. [76-1] at 54. Instead, Winston put Rogers in the squad car, took him to the station, and put him in a cell, where he remained for one to two hours. [76-1] at 54. After Rogers was released on bond, his brother took him to the hospital. [76-1] at 55–56. Rogers had a broken arm and clavicle, and a black and swollen left eye. [76-1] at 57, 59. He had surgery done on his wrist, which left a 9-inch scar. [76-1] at 58–59.

Rogers was charged with resisting or obstructing a peace officer, driving too fast for prevailing conditions, and driving without insurance, but on June 2, 2015, the case was "stricken off [with] leave to reinstate." [77] ¶¶ 26–27. In June 2016, Rogers brought this action. [1]. Defendants now move for summary judgment on all claims. [75].

## Discussion

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

2

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation and footnote omitted). Construing the evidence and facts supported by the record in favor of the nonmoving party, the court gives the nonmoving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## I. § 1983 Claims

The court begins with Rogers's constitutional claims under 42 U.S.C. § 1983. Count 1 of Rogers' complaint, entitled "Claims Pursuant to 42 U.S.C. Section 1983 for Excessive Force," references a number of constitutional violations, including but not limited to excessive force, by all Defendants. [1] at 2–5. Defendants seek summary judgment on these claims, arguing that as a matter of law, the record does not support a violation of Rogers's constitutional rights.

In their summary judgment briefing, both parties focus their arguments on the Fourth Amendment rights implicated during Rogers's arrest. However, Rogers's response brief states in passing: "Plaintiff also claims that he was denied adequate medical care in violation of his constitutional rights under the 8th and 14th Amendments." [86] at 1. Rogers does not set forth the evidentiary basis for this claim or make any arguments to support it. "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). By failing to expand on this claim in his response brief, Rogers has forfeited it. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003) (claims not addressed in response to summary judgment are deemed abandoned). The same principle applies to any claims against the unidentified Harvey police officers: Rogers has pursued claims against only Winston, the City, Kellogg, and Eaves.

With the scope limited to the claims that Rogers supports and argues (arrest without probable cause and excessive force in violation of the Fourth Amendment), the court addresses Defendants' arguments for summary judgment in turn. Defendants contend: (1) there was probable cause for Rogers' arrest, (2) Winston's

3

use of force was objectively reasonable, and (3) there is no basis for a *Monell* claim against the municipal defendants.

## A. Probable Cause for Seizure

Rogers alleges that his arrest violated his Fourth Amendment right to be free from unreasonable seizures. It is "not a violation of the Fourth Amendment to arrest an individual for even a very minor traffic offense." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (quoting *Jackson v. Parker*, 627 F.3d 634, 639 (7th Cir. 2010)); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 323 (2001). However, an arrest is not valid under the Fourth Amendment unless the arrest is supported by probable cause, meaning "the totality of the facts and circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime." *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 842 (7th Cir. 2004) (quoting *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002)). The question whether there is probable cause "typically falls within the province of the jury." *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994). On the other hand, "a conclusion that probable cause existed as a matter of law is appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Id.*; *see also Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) ("If the underlying facts supporting the probable cause determination are not in dispute, the court can decide whether probable cause exists.").

Defendants contend that Winston had probable cause to arrest Rogers for leaving the scene of an accident because Winston found Rogers in the store—a location other than the scene of an accident.[2] Rogers argues that Winston did not see Rogers leave the scene of the accident. When Winston arrived at the scene, he merely observed that Rogers's car was off the road and looked like it had been in an accident. [77] ¶ 21. However, Rogers testified that he told the other officers at the scene that the car outside was his. *See* [76-1] at 51 ("[The officers] were asking me was that my car across the street, and I told them yes."). A reasonable officer in Winston's position could infer that Rogers had left his car to go inside the store.

However, the analysis is not as simple as Defendants claim. Defendants' position appears to be that physically leaving the scene of any accident is a crime, but they do not develop this argument under Illinois law. "The existence of

---

[2] Rogers points out that he was never charged with leaving the scene of an accident. *See* [76-1] at 23. That may be true, but it does not change the probable cause analysis. Probable cause "is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment," and "an arrest can be supported by probable cause that the arrestee committed any crime, regardless of the officer's belief as to which crime was at issue." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713–715 (7th Cir. 2013).

4

probable cause or arguable probable cause depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 715 (7th Cir. 2013). To prevail, Defendants must show as a matter of law that there was probable cause to arrest Rogers under Illinois law. Defendants rely on *Harris v. City of Harvey*, No. 97-cv-02823, 2000 WL 1468746 (N.D. Ill. Sept. 29, 2000), where the court applied 625 ILCS 5/11-401(a). That provision requires drivers of vehicles "involved in a motor vehicle accident resulting in personal injury to or death of any person" to "remain at the scene of the accident until the requirements of Section 11-403 have been fulfilled." *Id.* at *8 & n. 152 (quoting 625 ILCS 5/11-401(a)). It has no application here, since it is undisputed that the accident involved only Rogers and did not cause any personal injury or death.

In their reply brief, [89] at 2, Defendants clarify that they are arguing Winston had probable cause to arrest Rogers for a violation of 625 ILCS 5/11-404, which provides in relevant part:

> Duty upon damaging unattended vehicle or other property.
>
> (a) The driver of any vehicle which collides with or is involved in a motor vehicle accident with any vehicle which is unattended, or other property, resulting in any damage to such other vehicle or property shall immediately stop and shall then and there either locate and notify the operator or owner of such vehicle or other property of the driver's name, address, registration number and owner of the vehicle the driver was operating or shall attach securely in a conspicuous place on or in the vehicle or other property struck a written notice giving the driver's name, address, registration number and owner of the vehicle the driver was driving and shall without unnecessary delay notify the nearest office of a duly authorized police authority and shall make a written report of such accident when and as required in Section 11-406. Every such stop shall be made without obstructing traffic more than is necessary. If a damaged vehicle is obstructing traffic lanes, the driver of the vehicle must make every reasonable effort to move the vehicle or have it moved so as not to block the traffic lanes.

Defendants cite *Vajk v. Tindell*, No. 95-cv-5796, 1998 WL 60391 (7th Cir. Feb. 9, 1998), where the court held that there was probable cause to arrest for "leaving the scene of a property damage accident," *id.* at *2. There, an individual told the arresting officer that the plaintiff had "rammed his car into her car and attempted to run her off the road while she was dropping her car-pool children off at their homes," and then "demanded her purse" and drove away. *Id.* at *1. When a driver hits another car, Section 11-404 requires the driver to, among other things, stop and provide information to the driver who was hit. 625 ILCS 5/11-404. In *Vajk*, the

5

arresting officer reasonably believed that the plaintiff instead stole a purse and drove away.

The circumstances of this case are different. Defendants do not provide any authority explaining how the duties in Section 11-404 apply when a driver runs his car into a tree. Even assuming it would have been a violation for Rogers to simply abandon his car and flee the scene, a reasonable factfinder could decide that there was not probable cause for an arrest on this basis. Rogers argues that he was in the store to purchase a phone so he could call a tow company, and Defendants do not claim that temporarily leaving a car for purposes of obtaining help or towing services is against the law. Defendants instead contend that Winston had probable cause to arrest as soon as he found Rogers in the store and had no obligation to inquire further. However, Rogers' testimony indicates he may have explained to the officers why he was in the store before his arrest, which factors into the contemporaneous probable cause analysis. [76-1] at 51.

Drawing all inferences in Rogers' favor, a reasonable factfinder could decide that the totality of circumstances known to Winston at that point would not have led a reasonable officer to believe Rogers had committed a crime. The motion for summary judgment is denied as to Rogers' Fourth Amendment false arrest claim.

B. **Excessive Force**

Rogers also argues that even if there was probable cause, Winston used excessive force to accomplish the arrest. Excessive force would be an independent Fourth Amendment violation. *See Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 681 (7th Cir. 2007) ("It is possible for a police officer to use excessive force to make what is otherwise a legitimate arrest supported by probable cause."). An officer's use of force may violate the Fourth Amendment, depending on whether "the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (quotation omitted). The court looks to the "perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Burton v. City of Zion*, 901 F.3d 772, 777 (7th Cir. 2018) (quotation omitted). Courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Kisela v. Hughes*, ––– U.S. –––, 138 S. Ct. 1148, 1152 (2018) (quotation omitted).

Defendants contend that the undisputed facts establish that Winston's use of force was justified given the circumstances, but they do not argue that Rogers posed any threat at all to the officers or others, nor do they claim that the crime at issue was severe. *Kisela*, 138 S. Ct. at 1152. Instead, they argue that Winston's use of force was objectively reasonable in order to gain compliance and take Rogers into

6

custody. Defendants argue that since Rogers refused to speak about the accident and turned away from Winston, Winston reasonably believed that Rogers was failing to comply with orders, attempting to leave, and resisting arrest. But material disputes of fact stand in the way of this conclusion. While Defendants argue that Rogers was noncompliant because he refused to talk about the accident, Rogers testified that he had engaged with the officers, including Winston, at least to ask if he was being detained. Defendants also note that according to Winston, Rogers tried to walk past him to leave. But according to Rogers, he turned back around only to finish checking out, because he was next in the line at the checkout counter. The court cannot weigh this conflicting testimony at summary judgment.

The court is unable to conclude as a matter of law that Winston's use of force was objectively reasonable. "It is well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders." *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009); *see also Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 525 (7th Cir. 2012) (force was excessive when plaintiff did not actively resist arrest, exhibit any aggressive behavior toward the officers, or attempt to escape); *Mitchell v. Vill. of Matteson*, No. 20-cv-00990, 2020 WL 3035965, at *2 (N.D. Ill. June 5, 2020) ("There was no reason for [officers] to use any force under the alleged circumstances, let alone to team up and wrangle [plaintiff] to the ground when he presented no threat whatsoever.").

Defendants rely on cases where it was undisputed that the plaintiff either refused to comply with an officer's directions or posed a danger to others. *See Lawrence*, 391 F.3d at 840, 843 (plaintiff refused to give officer his driver's license, attempted to drive away from officer, and behaved in a "combative and irrationally angry" manner); *Fitzgerald v. Santoro*, 707 F.3d 725, 734 (7th Cir. 2013) (use of force to detain plaintiff was reasonable where it was "uncontested that she resisted"); *Price v. Wrencher*, No. 13-cv-01785, 2016 WL 2937024, at *4 (N.D. Ill. May 20, 2016) ("It is undisputed that Defendant Officers observed Plaintiff swinging a leather belt in a lasso-type fashion and speaking 'gibberish.'"). That is not the case here. A reasonable factfinder could credit Rogers's testimony and decide that Rogers never refused to comply with Winston's directions. Defendants do not argue that Rogers posed a danger to himself or others, and at the very least, material disputes of fact make it unclear whether Rogers was in any way combative. In sum, a reasonable factfinder could decide that Winston's use of force was not an objectively reasonable response.[3]

---

[3] Defendants argue that the Seventh Circuit has described an "arm bar" as a "minimally forceful technique[] designed to subdue non-compliant subjects and prevent escalation." *Fitzgerald*, 707 F.3d at 734. The court does not need to decide whether Winston used in this case an "arm bar" within the meaning of cases like *Fitzgerald*, because a reasonable factfinder could decide that Rogers was compliant and thus that no force was justified.

7

Defendants also assert that Winston is entitled to qualified immunity with respect to Rogers' excessive force claim.[4] "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under this doctrine, government officials are not liable when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Zimmerman v. Doran*, 807 F.3d 178 (7th Cir. 2015) (quoting *Pearson*, 555 U.S. at 231). To overcome this barrier, Rogers ultimately must show that (1) the defendant violated a constitutional right and (2) the right was "clearly established," *Pearson*, 555 U.S. at 232, both "at the time and under the circumstances presented," *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (quotation omitted).

As discussed above, Rogers has shown that a reasonable jury could find that Winston's use of force violated the Fourth Amendment, so the only remaining question is whether the right at issue was clearly established at the time. Rogers can prevail if "the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015) (quotation omitted). According to Winston, the "arm bar technique is routinely used by police officers to take suspects into custody." [77] ¶ 32. Defendants argue that this establishes that Winston's use of force could not have been so plainly excessive as to put Winston on notice of a constitutional violation. However, there is a material dispute of fact over whether Winston could have reasonably believed this force was necessary.

If Rogers's account of the incident is accurate, then it was clearly established law that Winston's use of force would violate the Fourth Amendment. At the time

---

Defendants also contend that there is no cause of action under Section 1983 for a police officer's negligent, rather than intentional, infliction of force. Specifically, Defendants argue that Winston cannot be held liable for negligently using an improper arm-bar technique so long as his attempt to use an arm bar was objectively reasonable. But the court does not need to address those questions here, as a reasonable factfinder could decide that any use of force was objectively unreasonable. In addition, a reasonable factfinder could find that the severity of the arm-bar technique that Winston employed was deliberate rather than negligent.

[4] Defendants argue that Rogers failed in his response brief to respond to their qualified immunity argument. However, Defendants' qualified immunity argument is coextensive with their general argument about the merits of the excessive force claim. Both arguments rely on *Lawrence*, *Fitzgerald*, and *Price* to assert that there was no (clearly established) right to be free from an "arm bar takedown" given the circumstances. *See* [76] at 5–6. Since Rogers responded to the general argument, the court declines to find that Rogers has waived or forfeited the issue of qualified immunity.

of the arrest, "it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects," and it was also well established "that police officers cannot continue to use force once a suspect is subdued." *Abbott*, 705 F.3d at 732. As an objective matter, Winston would have been on notice that he could not use force to arrest someone if that person did not resist arrest, pose a danger to himself or others, or refuse to comply with orders. *See Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003) (officer's use of force to arrest the plaintiff, including "forcing [the plaintiff's] arms behind her back, twisting her arm, and over-tightening the handcuffs," where the plaintiff "was not threatening to harm the police officer or anyone else at the scene, was not resisting or evading arrest, was not attempting to flee, and was charged with such minor offenses, was not objectively reasonable"). Winston is not entitled to qualified immunity as a matter of law, so the motion is denied with respect to the excessive force claim against him.

### C. *Monell* Liability

Rogers brings a *Monell* claim against the City, Kellogg, and Eaves.[5] Defendants appear to argue that the operative complaint fails to allege a cause of action under *Monell*. [76] at 8. The complaint, however, does set forth a Section 1983 claim against the City that alleges the City "maintained a custom and policy of encouraging officers to remain silent regarding excessive force." [1] at 5.

For there to be municipal liability, Rogers must satisfy the requirements of *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). He must show "(1) that [he] suffered a deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom or usage of the municipality." *Gibson v. City of Chicago*, No. 13-cv-03273, 2013 WL 6698164, at *3

---

[5] Rogers does not state whether he is bringing claims against Kellogg and Eaves in their individual or official capacities, but the court interprets Rogers's claims as official capacity claims since Rogers points to no evidence of individual involvement. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) ("Neither the Warden nor the Director may be held liable unless they had some personal involvement in the alleged constitutional deprivation. . . . Prison officials may satisfy the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at the official's direction or with his or her knowledge and consent."). Moreover, Defendants argue that to the extent Rogers is asserting an individual capacity claim against Kellogg and Eaves, there is no support in the record for such a claim. [76] at 11. Rogers did not respond to this argument, so any argument to the contrary is waived. *See Candell v. Shiftgig Bullpen Temp. Emp. Agency*, No. 17-cv-03620, 2019 WL 2173797, at *3 (N.D. Ill. May 20, 2019) (citing *Betco Corp., Ltd. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017)).

When a plaintiff asserts an official capacity claim, the action is deemed to be a suit against the local government itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). The court thus evaluates the claims against the City, Kellogg, and Eaves together.

9

(N.D. Ill. Dec. 17, 2013) (citing *Monell*, 436 U.S. at 694–95). Fact issues preclude summary judgment on the underlying constitutional claim, so the court rejects Defendants' arguments as to the first element. But to satisfy *Monell*'s second element, Rogers must also show that a reasonable factfinder could decide the constitutional violation was caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority. *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). A plaintiff "must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Defendants argue that Rogers cannot show a causal connection between the incident and one of these types of municipal action. Rogers does not argue that any of Harvey's express policies violated the law, or that Winston was directed to violate the law. Instead, he argues Defendants failed to adopt an adequate use of force policy and failed to properly train police officers on both the use of force and proper technique for tactics such as the arm bar. "But the path to *Monell* liability based on inaction is steeper because, unlike in a case of affirmative municipal action, a failure to do something could be inadvertent and the connection between inaction and a resulting injury is more tenuous." *J.K.J. v. Polk Cty.*, 960 F.3d 367, 378 (7th Cir. 2020).

Addressing the training argument first: "A failure-to-train claim is actionable only if the failure amounted to deliberate indifference to the rights of others." *Miranda v. Cty. of Lake*, 900 F.3d 335, 345 (7th Cir. 2018) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bryan Cty.*, 520 U.S. at 409). While a pattern is not necessary in all cases, the Supreme Court has described the alternative—"single incident liability"—as only available in a "narrow range" of circumstances. *Id.* at 63–64. It could be the case that the "unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64. Where the Seventh Circuit has affirmed liability on this theory, there was evidence of a total failure to respond to a patently obvious risk. *See J.K.J.*, 960 F.3d at 379 (training on preventing and detecting the sexual harassment and abuse of inmates was "all but nonexistent"); *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 382 (7th Cir. 2017) (en banc) ("total lack of coordination" for treatment of chronically ill inmates); *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 926 (7th Cir. 2004) (suicide prevention procedures "systematically ignored").

To proceed on this theory, Rogers must put forward evidence from which a jury could find that the Defendants "(1) failed to provide adequate training in light of foreseeable consequences; or (2) failed to act in response to repeated complaints of

10

constitutional violations by its officers." *Miranda*, 900 F.3d at 345 (citation and internal quotation marks omitted). "In essence, the defendant must have actual or constructive notice of a problem." *Id.* (citing *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997)); *see also Connick*, 563 U.S. at 61 (deliberate indifference requires "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights"). Rogers has not pointed to any evidence that the Defendants were on notice that a particular omission would cause constitutional violations. He does not point to evidence of either a pattern of similar constitutional violations or an obvious risk connected to a specific feature or omission of the City's training program.

It is undisputed that the Harvey Police Department had a use of force policy in place at all relevant times. [77] ¶ 33; [87] ¶ 33. According to Training Officer Robert Wright, Harvey police officers were required to take a course on the use of force.[6] Harvey itself offered such a course, although officers could alternatively also take the course outside the department to satisfy this requirement. [76-1] at 149–50. Harvey's use of force training included the topic of excessive force. [76-1] at 149–50. While there is a factual dispute about the training that Winston himself received, the focus of a failure to train inquiry "must be on the [training] program, not whether particular officers were adequately trained." *Palmquist v. Selvik*, 111 F.3d 1332, 1345 (7th Cir. 1997). Rogers's failure to train argument primarily rests on the fact that the Department of Justice investigated the Harvey police department in 2012 and published a Technical Assistance Report. That report recommended that the police department conduct additional training on the use of force policy. [87-1] at 247. However, Rogers has not contextualized any of the DOJ findings within this case. He has not, for example, produced any evidence about the City's response to the report or any changes the City considered or made in its aftermath.

In any event, even if the City were "somehow deficient in providing its officers proper police training," Rogers must still "demonstrate how the failure to provide specific training had a causal nexus with the claimed injury." *Palmquist*, 111 F.3d at 1345. Rogers must be able to show (at summary judgment, create a genuine fact dispute) that "the identified deficiency in the city's training program" is "closely related to the ultimate injury." *City of Canton*, 489 U.S. at 391. Rogers has not put forward evidence of any causal link between an official policy or custom and Winston's actions in this case. Rogers's generalized causation argument amounts to the proposition that if the City provided better or more adequate use of force training, Winston would not have used excessive force in this case. That is not

---

[6] Rogers purports to dispute this testimony by arguing that the Harvey PD Operations Manual does not explicitly state that officers must undergo use of force training. Rogers attaches only excerpts of that manual, *see* [87-1] at 145–49, and in any event, Wright did not testify that this requirement was set forth in the manual. Thus, there is not a genuine dispute of fact on this point.

11

enough to connect a particular training omission to Winston's specific actions. *See City of Canton*, 489 U.S. at 391 ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."). Nor does Rogers point to any finding in the 2012 DOJ report that could have put Defendants on notice that a specific training omission made Winston's conduct in this case foreseeable. There is no evidence that Winston's actions were an instance of "a risk so obvious that it compels municipal action." *J.K.J.*, 960 F.3d at 381. In short, Rogers has not presented evidence that would allow a reasonable factfinder to infer that a "lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, [was] the moving force behind [his] injury." *Bryan Cty.*, 520 U.S. at 408 (citation and internal quotation marks omitted).

By the same token, Rogers's argument that Defendants failed to write an adequate use of force policy also is not persuasive. As Rogers notes, the DOJ's Technical Assistance Report noted that Section 2.41 of Harvey's policy, "Rules of Conduct," contained "no rules against abuse of force, excessive force, or violation of citizens' rights," and recommended that the policy "be amended to contain specific rules against these particular actions." [87-1] at 257. Rogers argues that Harvey did not remedy this problem, given that Section 2.41 of the policy still does not contain an express prohibition against excessive force. [87-1] at 130–44. Additionally, the report provided recommendations for improving Section 3.81, "Use of Force." [87-1] at 145–49; [87-1] at 261–62.

This evidence is not enough to support a *Monell* claim. Rogers does not link any express provision in the manual or any DOJ recommendation for improving it to the particulars of Winston's use of force. In context with the rest of the record, including testimony that officers were required to undergo use of force training, Rogers's arguments about the policy are not enough to support liability.

Rogers also appears to argue that since the use of force policy did not mandate investigations unless a shooting was involved, the policy did not adequately convey the seriousness or deter the use of excessive force. Here too, there is not enough evidence for a reasonable factfinder to infer that this policy played any role in Winston's actions.

Ultimately, Rogers' general argument that the use of force policy and corresponding training should have been improved is not enough to support liability. Since a reasonable factfinder could not decide that a municipal policy or custom caused Rogers' injury, the City, Kellogg, and Eaves are entitled to summary judgment on Rogers' constitutional claims.

12

## II.    State Law Claims

Finally, Defendants argue that Rogers's state law claims for false arrest, malicious prosecution, and battery are time-barred.[7] Rogers did not respond to this argument in his response brief, so any argument in response is waived. "A non-movant's failure to respond to arguments addressed in a summary judgment motion results in a waiver." *Candell v. Shiftgig Bullpen Temp. Emp. Agency*, No. 17-cv-03620, 2019 WL 2173797, at *3 (N.D. Ill. May 20, 2019) (citing cases including *Betco Corp., Ltd. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017); *Walton v. U.S. Steel Corp.*, 497 F. App'x 651, 655 (7th Cir. 2012)).

Even if Rogers had responded, the court agrees with Defendants that the state law claims are time-barred. Illinois law provides a one-year statute of limitations period for all civil actions brought against any "local entity or any of its employees." 745 ILCS 10/8-101(a). "Under Illinois law, false arrest claims accrue on the date of the arrest and are subject to a one-year statute of limitations." *Ellis v. City of Chicago*, No. 13-cv-02382, 2016 WL 212489, at *10 (N.D. Ill. Jan. 19, 2016) (citing *Rizzo v. Wheaton Police Dep't*, 2010 WL 1996386, at *2 (N.D. Ill. May 17, 2010); 745 ILCS 10/8-101). Likewise, the battery claim "accrued on the date of the events." *Harris v. Wainscott*, No. 18-cv-02789, 2019 WL 1995270, at *2 (N.D. Ill. May 5, 2019). Finally, a malicious prosecution cause of action accrues when "the criminal proceeding on which it is based has been terminated in the plaintiff's favor." *Foryoh v. Hannah-Porter*, 428 F. Supp. 2d 816, 824 (N.D. Ill. 2006) (quoting *Ferguson v. City of Chicago*, 213 Ill.2d 94 (2004)).

Rogers's false arrest and battery claims accrued on January 12, 2015, the date of the incident and arrest, and his malicious prosecution claim accrued on June 2, 2015, the date his criminal case was terminated (and Defendants assume the termination was in Rogers's favor for purposes of the motion, [76] at 12 n.1). Plaintiff filed his complaint on June 3, 2016, which was over a year after all three claims accrued. These claims are time-barred.

## Conclusion

For the reasons given above, the court grants in part and denies in part the motion for summary judgment [75]. Summary judgment is granted in favor of Defendants on Rogers's state law claims (Counts 2–4) and Rogers's Section 1983 claims against Defendants City of Harvey, Kellogg, and Eaves. The motion is denied as to Rogers' Fourth Amendment claims against Defendant Winston.

Date: March 31, 2021                /s/ Martha M. Pacold

---

[7] Defendants also argue that probable cause is a complete defense to these claims. However, as discussed above, Defendants have not established that there was probable cause for the arrest as a matter of law.